GAUDALUPE AGUSTIN, In Pro Se
GERARDO AGUSTIN, In Pro Se
2853 Lodge Pole Court
North Las Vegas, NV 89030
Tel:

2:12-cv-00260-GMN-VCF

**UNITED STATES FEDERAL COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| GUADALUPE AGUSTIN AND GERARDO AGUSTIN, individuals, on behalf of themselves and all others similarly situated.<br><br>Plaintiffs,<br><br>v.<br><br>OPTION ONE MORTGAGE CORPORATION, as the Original Lender; PREMIER TRUST DEED SERVICES, as the Original Trustee; LAND TITLE NEVADA; Title Company; OPTION ONE MORTGAGE CORPORATION, as the Servicer; BEAR STEARNS & CO., INC., FTN FINANCIAL CAPITAL, BLAYLOCK & PARTNERS, LP, DEUTSCHE BANK SECURITIES, and VINING-SPARKS IBG, LP, as a Joint Book Running Managers; FEDERAL NATIONAL MORTGAGE ASSOCIATION, as PSA Issuer and Administrator; CAPITAL RESEARCH AND MANAGEMENT COMPANY, and THE GROWTH FUND OF AMERICA, INC, as PSA Filer; and DOES 1 THROUGH 100, INCLUSIVE<br><br>Defendants, | CASE NO<br><br>**COMPLAINT VERIFIED**<br>DAMAGES EXCESS $25,000<br><br>**DEMAND JURY TRIAL**<br><br>---<br><br>1. **LACK OF STANDING TO FORECLOSE**<br>2. **FRAUD IN THE CONCEALMENT**<br>3. **FRAUD IN THE INDUCEMENT**<br>4. **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**<br>5. **QUIET TITLE**<br>6. **SLANDER OF TITLE**<br>7. **DECLARATORY RELIEF**<br>8. **VIOLATIONS OF NEVADA CIVIL CODE SECTION 106.290 & 107.026, et seq.**<br>9. **VIOLATION OF NEVADA UNFAIR TRADE PRACTICES (NRS CHAPTER 598A)**<br>10. **CIVIL RICO** |

COMES NOW the Plaintiffs, GAUDALUPE AGUSTIN and GERARDO AGUSTIN ("Plaintiffs'),

complaining of the Defendants, and each of them, as follows:

**JURISDICTION AND VENUE**

1.  Jurisdiction for this action is properly founded in the Eight District Court, County of Clark, Nevada.

2.  The underlying property of this controversy is located in the jurisdiction of Eight District Court, County of Clark, Nevada.

3.  The Clark County is the location of the real property, located at 2853 LODGE POLE COURT, NORTH LAS VEGAS NV 89030 ("SUBJECT PROPERTY").

**INTRODUCTION**

4.  This is an action brought by Plaintiffs for declaratory judgment, injunctive and equitable relief, and for compensatory, special, general and punitive damages.

5.  Plaintiffs, homeowners, dispute the title and ownership of the real property in question (the "Home"), which is the subject of this action, in that the originating mortgage lender, and others alleged to have ownership, have unlawfully sold, assigned and/or transferred their ownership and security interest in a Promissory Note and Deed of trust related to the Property, and thus, do not have lawful ownership or a security interest in Plaintiffs' Home which is described in detail herein.

6.  Plaintiffs allege that Defendants, and each of them, cannot show proper receipt, possession, transfer, negotiations, assignment and ownership of the borrower's original Promissory Note and Deed of Trust, resulting in imperfect security interests and claims.

7.  Plaintiffs further alleges that Defendants, and each of them, cannot establish possession and proper transfer and/or endorsement of the Promissory Note and proper assignment of the Deed of Trust herein; therefore, none of the Defendants have perfected my claim of title or security interest in the Property. Defendants have perfected any claim of title or security interest in the Property. Defendants, and each of them, do not have the ability to establish that the mortgages that secure the indebtedness, or Note, were legally or properly acquired.

8. Plaintiffs allege that an actual controversy has arisen and now exists between the Plaintiffs and Defendants, and each of them.  Plaintiffs desire a judicial determination and declaration of its rights with regard to the Property and the corresponding Promissory Note and Deed of Trust.

9. Plaintiffs also seek redress from Defendants identified herein below for damages, for other injunctive relief, and for cancellation of written instruments based upon:

    a. An invalid and unperfected security interest in Plaintiffs' Home hereinafter described;

    b. Void "True Sale(s)" violating express terms of the **FANNIE MAE FIXED TO FLOATING RATE NON-CUMULATIVE PREFERRED STOCK SERIES I** ("PSA") governing the securitization of Plaintiffs; mortgage, which is a Trust Agreement required to be filed under penalty of perjury with the United States Securities and Exchange Commission ("SEC") and which, along with another document, the Mortgage Loan Purchase Agreement ("MLPA"), is the operative securitization document created by the finance and securitization industry to memorialize securitization transaction (see further discussion of the PSA herein);

    c. An incomplete and ineffectual perfection of a security interest in Plaintiffs' Home;

    d. VIOLATION OF NEVADA UNFAIR TRADE PRACTICES (NRS CHAPTER 598A) and

    e. A void or voidable Deed of Trust due to improper securitization, for which there is a reasonable apprehension that, if left outstanding, may cause a serious injury.

## THE PARTIES

10. Plaintiffs are now, and at all times relevant to this action, residents of the County of Clark, State of Nevada.

11. The Plaintiffs may bring in or consolidate with this case other persons who are similarly situated to Plaintiffs identified above.  Further, at all times material hereto, any of the Defendants have acted in the same or in another capacity with respect to loan processing.  All of the foregoing secured real estate loans made to Plaintiffs were wrongfully and handled and processed by Defendants, resulting in damages.  From time-to-time, upon conducting the due diligence and learning the information sufficient to add remaining Plaintiffs to this action, Plaintiffs shall seek leave of Court to amend this Complaint to name these additional Plaintiffs, or will follow such other process as is prescribed by the Court. In the event Plaintiffs believe it is in furtherance of judicial economy and justice to add all or any of these additional persons to this Complaint, Plaintiffs shall bring a noticed motion and to add such parties to this action or follow such procedure as the Court in this case may specify.  In the event Plaintiffs file a separate lawsuit appertaining to all or any of these persons, or such further number as may exist in view of future developments, Plaintiffs shall file all appropriate Notices of Related Cases in accordance with Nevada law, or as otherwise directed by the Court.

12. Defendant OPTION ONE MORTGAGE CORPORATION, ("ORIGINAL LENDER") is doing business in the County of Clark, State of Nevada.  Plaintiffs are further informed and believe, and thereon allege, that "ORIGINAL LENDER", is the Originator of the loan and/or purported participant in the imperfect securitization of the Note (incorporated by reference herein) and/or Deed of Trust, (incorporated by reference herein), as more particularly described in this Complaint.   Plaintiffs are further informed and believe that the "ORIGINAL LENDER" is a participant in fraud on the Plaintiff in the origination of the note.

13. Defendant, LAND TITLE COMPANY OF NEVADA, as the "TITLE COMPANY" who oversee the recording and processing of both Deed of Trust and Promissory Note is doing business in Clark, State of Nevada. Plaintiffs are further informed and believe, thereon allege, that

the Original Trustee and Title Company of the loan and/or purported participant in the imperfect securitization of the Note (incorporated by reference herein) and/or Deed of Trust, (incorporated by reference herein), as more particularly described in this Complaint. Plaintiffs are further informed and believe that the "TITLE COMPANY" is a participant in fraud on the Plaintiff in the origination of the note.

14. Defendant, PREMIER TRUST DEED SERVICES, INC as the "ORIGINAL TRUSTEE" who oversee the recording and processing of both Deed of Trust and Promissory Note is doing business in Clark, State of Nevada. Plaintiffs are further informed and believe, thereon allege, that the Original Trustee and Title Company of the loan and/or purported participant in the imperfect securitization of the Note (incorporated by reference herein) and/or Deed of Trust, (incorporated by reference herein), as more particularly described in this Complaint. Plaintiffs are further informed and believe that the "ORIGINAL TRUSTEE" is a participant in fraud on the Plaintiff in the origination of the note.

15. Defendant, BEAR STEARNS & CO., INC., FTN FINANCIAL CAPITAL, BLAYLOCK & PARTNERS, LP, DEUTSCHE BANK SECURITIES, and VINING-SPARKS IBG, LP ("JOINT BOOK RUNNING MANAGERS" or the PSA Sponsor and Depositor), is doing business in the County of Clark, State of Nevada. Plaintiffs are further informed and believe, and thereon allege, that PSA Sponsor and Depositor" is the present purported Securitization Seller of a portion of the mortgage loans. The remainder of the mortgage loans will be sold directly to the depositors by one or more special purpose entities that were established by "DEPOSITOR" which, in turn, acquired those mortgage loans directly from "ORIGINAL LENDER" herein and/or is a purported participant in the imperfect securitization of the Note (incorporated by reference herein) and/or the Deed of Trust, (incorporated by reference herein), as more particularly described in this Complaint.

16. Defendant, CAPITAL RESEARCH AND MANAGEMENT COMPANY, and THE GROWTH FUND OF AMERICA, INC, ("PSA Filers"), is doing business in the County of Clark, State of Nevada. Plaintiffs are further informed and believe, and thereon allege, that PSA Filers" is the present purported Securitization of a portion or as a whole of the mortgage loans. The remainder of the mortgage loans will be sold directly to the depositors by one or more special purpose entities that were established by "DEPOSITOR" which, in turn, acquired those mortgage loans directly from "ORIGINAL LENDER" herein and/or is a purported participant in the imperfect securitization of the Note (incorporated by reference herein) and/or the Deed of Trust, (incorporated by reference herein), as more particularly described in this Complaint.

17. Defendant, OPTION ONE MORTGAGE CORPORATION ("PSA SERVICER"), is a National Banking Association, doing business in the County of Clark, State of Nevada. Plaintiffs are further informed and believe, and thereon allege, that "PSA SERVICER", is the present purported Master Servicer of the mortgage herein and/or is a purported participant in the imperfect securitization of the Note (incorporated by reference herein) and/or the Deed of Trust, (incorporated by reference herein), as more particularly described in this Complaint.

18. Defendant, FEDERAL NATIONAL MORTGAGE ASSOCIATION ("PSA Administrator"), is doing business in the County of Clark, State of Nevada. Plaintiffs are further informed and believe, and thereon allege, that "PSA Administrator", is the present purported PSA Issuer of the mortgage herein and/or is a purported participant in the imperfect securitization of the Note (incorporated by reference herein) and/or the Deed of Trust, (incorporated by reference herein), as more particularly described in this Complaint.

19. At all times relevant to this action, Plaintiffs have owned the Property located at 2853 LODGE POLE COURT, NORTH LAS VEGAS, NEVADA 89030 (the "Property").

20. Plaintiffs do not know the true names, capacities, or basis for liability of Defendants

sued herein as Does 1 through 100, inclusive, as each fictitiously named Defendant is in some manner liable to Plaintiffs, or claims some right, title, or interest in the Property. Plaintiffs will amend this Complaint to allege their true names and capacities when ascertained. Plaintiffs are informed and believe, and therefore allege, that all relevant times mentioned in this Complaint, each of the fictitiously named Defendants are responsible in some manner for the injuries and damages to Plaintiffs so alleged and that such injuries and damages were proximately caused by such Defendants, and each of them.

21. Plaintiffs are informed and believe, and thereon allege, that's at all times herein mentioned, each of the Defendants were the agents, employees, servants and/or the joint-ventures of the remaining Defendants, and each of them, and in doing the things alleged herein below, were acting within the course and scope of such agency, employment and/or joint venture.

## JURISDICTION

2. This Court has original jurisdiction over the claims in this action based on 28 U.S.C. §§ 1331, 1332, 1343, and 42 U.S.C. §1983 which confer original jurisdiction on federal district courts in suits to address the deprivation of rights secured by federal law and matters between diverse citizens that involve an amount in controversy in excess of $75,000.00. This Court also has supplemental jurisdiction over the pendant state law claims because they form a part of the same case or controversy under Article III of the United States Constitution, pursuant to 28 U.S.C. §1367.

3. The-unlawful conduct, illegal practices, and acts complained of and - alleged in this Complaint were all committed in the Federal District of Nevada and the involved real property located in the Federal District of Nevada. Therefore, venue properly lies in this District, pursuant to 12 U.S.C. §2614 and 28 U.S.C. §1391(b).

4. Plaintiffs are ignorant of the true identity and capacity of defendants designated as Does 1-100, but will amend the Complaint when their identities have been ascertained according to proof at

the time of trial. Plaintiffs allege on information and belief, however, that each and every Doe Defendant is in some manner responsible for the acts, and conduct of the other defendants, and were, and are responsible for the injuries, damages, and harm, incurred by Plaintiffs. Plaintiffs further allege on information and belief that each such designated defendant acted, and acts, as the authorized agent, representative, and associate of the other defendants in doing the things alleged herein. >

5.   Whenever reference is made in this Complaint to any act of any defendant(s), that allegation shall mean that each defendant acted individually and jointly with the other defendants.

6.   Any allegation about acts of any corporate or other business defendant means that the corporation or other business did the acts alleged through its officers, directors, employees, agents and/or representatives while they were acting within the actual or ostensible scope of their authority.

7.   At all relevant times, each defendant committed the acts, caused or directed others to commit the acts, or permitted others to commit the acts alleged in this Complaint. Additionally, some or all of the defendants acted as the agent of the other defendants, and all of the defendants acted within the scope of their agency if acting as an agent of the other.

22. At all relevant times, each defendant knew or realized that the other defendants were engaging in or planned to engage in the violations of law alleged in this Complaint. Knowing or realizing that the other defendants were engaging in or planning to engage in unlawful conduct, each defendant nevertheless facilitated the commission of those unlawful acts. Each defendant intended to and did encourage, facilitate, or assist in the commission of the unlawful acts, and thereby aided and abetted the other defendants in the unlawful conduct.

## FACTUAL ALLEGATIONS

23. Plaintiffs executed a series of documents, including but not limited to a Note and Deed of Trust, securing the Property in the amount of note.  The original beneficiary and nominee under

the Deed of Trust was "ORIGINAL LENDER".

24. Plaintiffs are informed and believe, and thereon allege, that this loan was securitized, with the Note not being properly transferred to Defendant, "PSA SERVICER", acting as the Servicer for the Securitized Trust. As set forth herein above, the Securitized Trust was formed by execution of the PSA.

25. Plaintiffs are informed and believe, and thereon allege, that the purchase mortgage on the Property, the debt or obligation evidenced by the Note and the Deed of Trust executed by Plaintiffs in favor of the original lender and other Defendants, regarding the Property, was not properly assigned and transferred to Defendants operating the pooled mortgage funds or trusts in accordance with the PSA of the entities making and receiving the purported assignments to this trust.

34. "ORIGINAL LENDER" was a "correspondent lender" that originated mortgage loans which in turn, was sold and transferred into a "federally-approved securitization" named **FANNIE MAE FIXED TO FLOATING RATE NON-CUMULATIVE PREFERRED STOCK SERIES I.**

35. The Note and Deed have taken two distinctly different paths. The Note was securitized into FANNIE MAE FIXED TO FLOATING RATE NON-CUMULATIVE PREFERRED STOCK SERIES I.

36. The written agreement that created the FANNIE MAE FIXED TO FLOATING RATE NON-CUMULATIVE PREFERRED STOCK SERIES I is a matter of public record described in an "Offering Circular," available on the Fannie Mae website.   The promissory note in this case became Fannie Mae property in compliance with the requirement set forth in the Offering Circular.   The acquisition of the assets of the subject Fannie Mae Fixed to Floating Rate Non-Cumulative Preferred Stock Series I and the Offering Circular are governed under the law.

37. Moreover, Fannie Mae is not required to register the Preferred Stock with the U.S. Securities and Exchange Commission (the "SEC") under the Securities Act of 1933, as amended. The shares of Preferred Stock are "exempted securities" within the meaning of the Securities Exchange Act of 1934, as amended (the "Exchange Act").

38. The loan was originally made to OPTION ONE MORTGAGE CORPORATION and was sold and transferred to FANNIE MAE FIXED TO FLOATING RATE NON-CUMULATIVE PREFERRED STOCK SERIES I. There is no record of Assignments from the original lender First Magnus Financial Corporation Loan to Fannie Mae.

39. In *Carpenter v. Longan* 16 Wall. 271,83 U.S. 271, 274, 21 L.Ed. 313 (1872), *the U.S. Supreme Court stated "The note and mortgage are inseparable; the former as essential, the latter as an incident.  An assignment of the note carries the mortgage with it, while assignment of the latter alone is a nullity."*

> An obligation can exist with or without security.  With no security, the obligation is unsecured but still valid.  A security interest, however, cannot exist without an underlying existing obligation.  It is impossible to define security apart from its relationship to the promise or obligation it secures.  If the creditor transfers the note but not the deed of trust, the transferee receives a secured note; the security follows the note, legally if not physically.  If the transferee is given the deed of trust without the note accompanying it, the transferee has no meaningful rights except the possibility of legal action to compel the transferor to transfer the note as well, if such was the agreement. (Kelley v. Upshaw 91952) 39 C.2d 179, 246 P.2d 23; Polhemus v. Trainer (1866) 30C 685)
>
> "Where the mortgagee has "transferred" only the mortgage, the transaction is a nullity and his "assignee" having received no interest in the underlying debt or obligation, has a worthless piece of paper (4 Richard R. Powell), Powell on Real Property, § 37.27 [2] (2000)

49.    By statute, assignment of the mortgage carries with it the assignment of the debt. . . Indeed, in the event that a mortgage loan somehow separates interests of the note and the deed of trust, with the deed of trust lying with some independent entity, the mortgage may become unenforceable. *The practical effect of splitting the deed of trust from the promissory note is to make it impossible for the holder of the note to foreclose*, unless the holder of the deed of trust is the

agent of the holder of the note. Without the agency relationship, the person holding only the note lacks the power to foreclose in the event of default. The person holding only the deed of trust will never experience default because only the holder of the note is entitled to payment of the underlying obligation. *The mortgage loan becomes ineffectual when the note holder did not also hold the deed of trust.*"

50.     ANY ATTEMPT TO TRANSFER THE BENEFICIAL INTEREST OF A TRUST DEED WITHOUT OWNERSHIP OF THE UNDERLYING NOTE IS VOID UNDER NEVADA LAW.

51. Plaintiffs, therefore, allege, upon information and belief, that none of the parties to neither the securitization transaction, nor any of the Defendants in this case, hold a perfected and secured claim in the Property; and that all Defendants are estopped and precluded from asserting an unsecured claim against Plaintiff's estate.

## FIRST CAUSE OF ACTION
### LACK OF STANDING
### (AGAINST ALL DEFENDANTS)

52. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

53. An actual controversy has arisen and now exists between Plaintiffs and Defendants specified hereinabove, regarding their respective rights and duties, in that Plaintiffs contend that Defendants, and each of them, do not have the right to foreclose on the Property because Defendants, and each of them, have failed to perfect any security interest in the Property. Thus, the purported power of sale by the above specified Defendants, and each of them, no longer applies. Plaintiffs further contend that the above specified Defendants, and each of them, do not have the right to foreclose on the Property because said Defendants, and each of them, did not properly comply with the terms of Defendants' own securitization requirements and falsely or fraudulently

prepared documents required for Defendants, and each of them, to foreclose as a calculated and fraudulent business practice.

54. Plaintiffs are informed and believe and there upon allege that the only individual who has standing to foreclose is the holder of the note because they have a beneficial interest. The only individuals who are the holder of the note are the certificate holders of the securitized trust because they are the end users and pay taxes on their interest gains; furthermore, all of the banks in the middle were paid in full.

55. Plaintiffs request that this Court find that the purported power of sale contained in the Note and Deed of Trust has no force and effect at this time, because Defendants' actions in the processing, handling and attempted foreclosure of this loan involved numerous fraudulent, false, deceptive and misleading practices, including, but not limited to, violations of State laws designed to protect borrowers, which has directly caused Plaintiffs to be at an equitable disadvantage to Defendants, and each of them. Plaintiffs further request that title to the Property remain in its name, with said Deed of Trust remaining in beneficiaries' name, during the pendency of this litigation, and deem that any attempted sale of the Property is "unlawful and void".

56. Defendants, and each of them, through the actions alleged above, have illegally commenced foreclosure under the Note on the Property via a foreclosure action supported by false or fraudulent documents. Said unlawful foreclosure action has caused and continues to cause Plaintiffs great and irreparable injury in that real property is unique.

57. The wrongful conduct of the above specified Defendants, and each of them, unless restrained and enjoined by an Order of the Court, will continue to cause great and irreparable harm to Plaintiffs. Plaintiffs will not have the beneficial use and enjoyment of its Home and will lose the Property.

58. Plaintiffs has not other plain, speedy or adequate remedy and the injunctive relief prayed

for below is necessary and appropriate at this time to prevent irreparable loss to Plaintiffs. Plaintiffs have suffered and will continue to suffer in the future unless Defendants' wrongful conduct is restrained and enjoined because real property is inherently unique and it will be impossible for Plaintiffs to determine the precise amount of damage it will suffer.

## SECOND CAUSE OF ACTION

### DECEIT INTENTIONAL MISREPRESENTATION

### (Against All Defendants)

59. Plaintiffs re-allege and incorporate by reference all preceding paragraph as though fully set forth herein.

60. The State of Nevada has statutorily prescribed non-judicial foreclosure procedures, in Sections §2924 et. seq. In the Cal. Civil. Code.  Homes are normally foreclosed pursuant to the statutory power of sale, without a pre-foreclosure court hearing.

61. Pursuant to Statutory requirements, entities seeking to exercise a right of foreclosure pursuant to a Deed of Trust, [foreclosing on mortgages] must strictly comply with the State's Statutory Prerequisites to foreclosure.

62. The foreclosing entity must have actual assigned legal authority to file the Notice of Default ..the power of sale, Cal. Civil Code §725 a. §726.  The statutory power of sale, ...in virtually all Nevada residential mortgages provides for foreclosure sales approve by the "beneficiary" and **by the trustee** named in a deed.. or if there be a successor trustee duly recorded, as in Section "§725 Cal. Civil Code.

63. Deed of Trusts, rights to exercise a power of sale by the Trustee and dictated by the owner of the note under the contract may be assigned, but a valid written assignment, consistent with the statute of frauds, is a prerequisite to effectuate an assignment Section §2932.5 of the Nevada Code.

64. With the absence, defective or unperfected assignment or substitution, an entity attempting to avail of any rights of a Trustee, has no rights as a "trustee", and there is only one Trustee to act at a time.  The trustee ...or to send notices required by the statute of fraud, governing the Deed of Trust Contract acknowledged and signed by Plaintiff.

65. A foreclosing trustee and beneficial owner owe the mortgagor a duty of good faith and reasonable diligence in the foreclosure process. Failure to send a legally correct statutorily required notice is inconsistent with the duty of good faith and reasonable diligence.

66. Statute of frauds, Section §2932.5 Cal. Civil Code, dictates how an assignee, is required to possess such assignment in writing and record such.

67. The Defendants owed a duty of good faith and reasonable prudence while doing the diligence in the commencement and conduct of foreclosing proceedings.

68. The complexities of MERS, Securitization, Credit Default Swaps, Insurance Reimbursements, HAMP Monies, FDIC, and the AIG bailout make the tradition lending practices incongruent.

69. This is not the traditional model most everyone older than 40 grew up understanding. It is complex and has many side agreements.

70. The assignment of a mortgage without a transfer of the indebtedness confers no right, since debt and security are inseparable and the mortgage alone is not a subject of transfer. "A trust deed has no assignable quality independent of the debt; it may not be assigned or transferred apart from the debt; and an attempt to assign the trust deed without a transfer of the debt is without effect."

71. The Promissory Note is a negotiable instrument. Transferring a Deed of Trust by itself does not allow enforcement of the instrument unless the Promissory Note is properly negotiated. Where an instrument has been transferred, enforcement abilities based upon possession, Section §3301 (Cal. Com. Code) negotiable instrument. "Exhibit A-1" copy of the recorded Deed of Trust, Paragraph 20, mentions that ""*The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower.*"

72. None of the Defendants are present holder of the instrument or are non holders in possession with rights of the holder. None of the Defendants are entitled to enforce the instrument Sections 3309 & 3418 sub. (d) of the Nevada Com. Code.

73. Defendants have no enforceable rights under Cal. Com. Code 3301(a) and it is unknown where Plaintiff security interest is located. "Foreclosing Trustee" states they have the note and the Deed of Trust in a publically recorded document.

74. NY Trust Laws and IRS Tax Statutes suggest, as a matter of law, that this feat would cause a large tax burden by such acceptance into a tax exempt trust.

75. Defendants knew these actions were a false representation, done with the intent to deceive and induce reliance by Plaintiff, and others whereby the fruits of these inducements would inure to the enrichment and benefits to the defendants herein.

76. The Securities and Exchange filings for the NY Trust outlines proper legal procedure. Sections of the Pooling and Servicing Agreement as per "Exhibit A" presented in the Securitization Analysis Report, outline in detail procedures for proper processing of both the Deed of Trust and Notes, and placing them in trust in a recordable form. This specific step is necessary for the underwriting and insurance guarantees.  This enforceable agreement demonstrates the deceit placed on this Court. This is an SEC regulated offering not a simple loan.

77. This Pooling and Servicing agreement further demonstrates deceit on this court.  The assignment presented in the recording is untrue by operation of law.  This Trust was closed to any substitutions after PSA Cut-off Date.

78. Assigning a defaulted loan into a tax sheltered fund would cause a major tax implication, tax impact to the shareholder into the millions of dollars, and in violation of the Securities Laws for which they used to register such an offering.

79. The deed of trust substitution is absolute trickery and a means to mislead the court and others into the devious and dishonest business practices these entity continue to propagate on innocent people such as Plaintiff.

80. Plaintiff has a document that states the "Original Lender".  It came from "Original Servicer".   It states that "Original Lender" was the warehouse lender and that the money was funded from them.

81. The Securities and Exchange Commission filings publically submitted by "SPONSOR/SELLER", did not reveal a warehouse line from "ORIGINAL LENDER". "ORIGINAL LENDER since has been closed and is now formally being investigated by the Department of Justice.

82. Plaintiff's copy of this note after it was endorsed in blank without recourse.  It would appear to be a nullity and separates the note from any recordable interest. (ex-4)

83. The deceit above may be summarized for easy access of each of the parties:

    a)  "ORIGINAL LENDER" information including deceit outlined in Cause of Action #1.  "ORIGINAL LENDER" apparently failed to lend any of their own money for Plaintiff's loan despite indicating it had done so both contractually and verbally. Plaintiff relied on this information, acted on this information, "ORIGINAL LENDER"

intended Plaintiff to act on such information while knowing this information was not true, and Plaintiff so acted to his detriment. "ORIGINAL LENDER" was fully aware of such self dealings and deceptions.  This may have may issues with excessive and undisclosed "Yield Spread Premiums"

b) "ORIGINAL TRUSTEE" as Trustee with such duties was patently false on its surface as it was the lender and has responded to suit as such. This Trustee has a contractual conflict of interest because the "ORIGINAL LENDER" was put forth to mislead and allow the events to take place in a closed closely controlled transaction without representation of Plaintiff's interests, while knowing that the information was not true and that Plaintiff relied on such honesty and presentation to act, and was induced with "ORIGINAL SERVICER" to act and that Plaintiff did to his detriments. This duel action of lender and trustee is a conflict unroofed due to the extra ordinary efforts to detail the mortgage proffering business.  This "Special Relationship" goes from Insurance, Escrow, and Mortgage Broker (friends), and is incestuous, omnipresent, and indistinct able.

c) "FORECLOSING TRUSTEE", acting through instructions from "PSA SERVICER", and not a signed agent of the beneficiary and not with an agency agreement to perform for that Beneficiary. "FORECLOSING TRUSTEE' acted without regards to the truth, and not in compliance with requests.  Distortion of truths done knowing the actual truth, with the intent for others to act including Plaintiff, Courts and other consumers, to the detriment of the same.  They are involved in thousands of foreclosures the full extent is just now starting to surface.   "FORECLOSING TRUSTEE" did not have an agency agreement with "PSA TRUSTEE" the alleged Beneficiary.  "PSA SERVICER" has the agreement with "SERVICER", the Master Servicer.  Filing documents known to be false as "PSA TRUSTEE" agent of the beneficiary is incorrect and further misleading.  Plaintiff has sworn testimony in court depositions which allows further light to shine on these activities.

d) "SERVICER" as outlined above has acted without regards to the statutory FDCPA duties of the newly acquired Master Servicer, including notifying Plaintiff of any change in ownership or what amount was due on his account. "SERVICER" had the duty to respond to the Beneficiary Statement request governed by Section §2943 of the Nevada Code. It did not. All done while knowing the truth. All done contrary to the statutory

requirements set forth, with the intent for Plaintiff and others to act, and while knowing what they were doing was not truthful. The Plaintiff relied on this to his detriments, and has been damaged. Plaintiff diligence and documents will support these claims, and that of expert witnesses.

e) "PSA TRUSTEE" has a duty as Trustee of an SEC filed Securitization Trust to follow the Pooling and Servicing Agreements and also to follow NY Trusts, SEC Security Laws and IRS tax laws. "PSA TRUSTEE" as alleged assigned Beneficiary took in assignment of this defaulted loan had a direct assigned contractual duty to Plaintiff. A loan in default is not allowed to be added to a tax free trust by the NY Trust Laws. "PSA TRUSTEE" knew this was the fact. "PSA TRUSTEE" did these acts knowing that they were not allowed. "PSA TRUSTEE" did this while creating a paper trail that Plaintiff and others would rely on to their detriments. "PSA TRUSTEE" knew the damages that this would cause. "PSA TRUSTEE" further knew that Plaintiff's loan was paid by either cross collateralization, insurance, swaps, or other mechanisms. PSA TRUSTEE is trying to collect on the same loan multiple times."

84. Plaintiff had no indication that he should not rely on the fraudulent and deceitful misrepresentation and for that he has suffered the resulting damages of loss of personal savings, costs of the representation, credit damages, and opportunity costs resulting in the full time focus of his representation, and other damages determined at trial. This maybe subject to punitive, consequential, emotional distress, and recession.

## THIRD CAUSE OF ACTION

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (Against All Defendants)

85. Plaintiffs re-allege and incorporated by reference all preceding paragraphs as though fully set forth herein.

86. The actions of Defendants, as set forth herein, have resulted in the Plaintiffs being threatened with the loss of the Property.

87. This outcome has been created without any right or privilege on the part of the Defendants, and, as such, their actions constitute outrageous or reckless conduct on the part of Defendants.

88. Defendants intentionally, knowingly and recklessly misrepresented to the Plaintiffs those Defendants were entitled to exercise the power of sale provision contained in the Deed of Trust.   In fact, Defendants were not entitled to do so and have no legal, equitable, or actual beneficial interest whatsoever in the Property.

89. Defendants' conduct – fraudulently attempting to foreclose on a property in which they have no right, title, or interest – is so outrageous and extreme that it exceeds all bounds which is usually tolerated in a civilized community.

90. Such conduct was undertaken with the specific intent of inflicting emotional distress on the Plaintiffs, such that Plaintiffs would be so emotionally distressed and debilitated that he/she would be unable to exercise legal rights in the Property; the right to title of the Property, the right to cure the alleged default, right to verify the alleged debt that Defendants are attempting to collect, and right to clear title to the Property such that said title will regain its marketability and value.

91. At the time Defendants began their fraudulent foreclosure proceedings, Defendants were not acting in good faith while attempting to collect on the subject debt.  Defendants, and each of them, committed the acts set forth above with complete; utter and reckless disregard of the probability of causing Homeowners to suffer severe emotional distress.

92. As an actual and proximate cause of Defendants attempt to fraudulently foreclose on Plaintiff's home, the Plaintiffs have suffered severe emotional distress, including but not limited to lack of sleep, anxiety, and depression.

93. Plaintiffs did not default in the manner state in the Notice of Default, yet because Defendants' outrageous conduct, Plaintiffs have been living under the constant emotional nightmare

of losing the Property.

94. As a proximate cause of Defendant's conduct, Plaintiffs have experienced many sleepless nights, severe depression, lack of appetite, and loss of productivity at its place of employment.

95. The conduct of Defendants, and each of them, as herein described, was so vile, base, contemptible, miserable, wretched, and loathsome that it would be looked down upon and despise by ordinary people. Plaintiffs are therefore entitled to punitive damages in an amount appropriate to punish Defendants and to deter other from engaging in similar conduct

## FIFTH CAUSE OF ACTION

### SLANDER OF TITLE

### (Against All Defendants and Does 45-60)

96. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

97. Plaintiffs incorporate here each and every allegation set forth above. Defendants, and each of them, disparaged Plaintiffs' exclusive valid title by and through the preparing, posting, publishing, and recording of the documents previously described herein, including, but not limited to, the RECORDED DOCUMENTS.

98. Said Defendants knew or should have known that such documents were improper in that at the time of the execution and delivery of said documents, Defendants had no right, title, or interest in the Property. These documents were naturally and commonly to be interpreted as denying, disparaging, and casting doubt upon Plaintiffs' legal title to the Property. By posting, publishing, and recording said documents, Defendants' disparagement of Plaintiffs' legal title was made to the world at large.

99. As a direct and proximate result of Defendants' conduct in publishing these documents, Plaintiffs' title to the Property ahs been disparaged and slandered, and there is a cloud on Plaintiffs' title, and Plaintiff has suffered, and continues to suffer, damages in an amount to be proved at trial.

100.    As a further proximate result of Defendant's conduct, Plaintiffs have incurred expenses in order to clear title to the Property.  Moreover, these expenses are continuing, and Plaintiffs will incur additional charges for such purpose until the cloud on Plaintiffs' title to the property has been removed.  The amounts of future expenses and damages are not ascertainable at this time.

101.    As a further direct and proximate result of Defendants' conduct, Plaintiffs have suffered humiliation, mental anguish, anxiety, depression and emotional and physical distress, resulting in the loss of sleep and other injuries to his and her health and well-being, and continue to suffer such injuries on an ongoing basis.  The amount of such damages shall be prove at trial.

102.    At the time that the false and disparaging documents were created and published by the Defendants, Defendants knew the documents were false and created and published them with the malicious intent to injure Plaintiffs and deprive them of their exclusive right, title and interest in the Property, and to obtain the Property for their own use by unlawful means.

103.    The conduct of the Defendants in publishing the documents described above was fraudulent, oppressive, and malicious.  Therefore, Plaintiffs are entitle to an award of punitive damages in an amount sufficient to punish Defendants for their malicious conduct and deter such misconduct in the future.

## FIFTH CAUSE OF ACTION

### QUIET TITLE

### (Against All Defendants)

104. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

105. Plaintiffs are entitle to equitable relief by a judicial decree and order declaring Plaintiffs to be the title owner of record of the Property as to the effective date of said cancellation, and quieting Plaintiffs' title therein and thereto subject only to such legitimate liens and encumbrances as the Court may deem void, and avoiding any liens or encumbrances upon the Property created by Defendants or by their punitive predecessors, or by any of them.

106. Plaintiffs desire and is entitled to a judicial declaration quieting title in Plaintiffs as of the date on which is loan transaction was consummated.

## SIXTH CAUSE OF ACTION

## DECLARATORY RELIEF

### (Against All Defendants)

107. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

108. An actual controversy has arisen and now exists between Plaintiffs and Defendants concerning their rights and duties regarding the Note and Trust Deed.

109. Plaintiffs contend that pursuant to the Loans, Defendants do not have authority to foreclose upon and sell the Property.

110. Plaintiffs are informed and believed and upon that basis alleges that Defendants dispute Plaintiffs contention and instead contend they may properly foreclose upon the Property.

111. Plaintiffs thereof request a judicial determination of the rights, obligations and interest of the parties with regard to the Property, and such determination is necessary and appropriate at this time under the circumstances so that all parties may ascertain and know their rights, obligations and interests with regard to the Property.

112.    Plaintiffs request a determination of the validity of the Trust Deeds as of the date the Notes were assigned without a concurrent assignation of the underlying Trust Deeds.

113.    Plaintiffs request a determination of the validity of the NOD.

114.    Plaintiffs request a determination of whether any Defendant has authority to foreclose on the Property.

## SEVENTH CAUSE OF ACTION

### VIOLATION OF NEVADA CIVIL CODE SECTION 2932.5

### (Against all Defendants)

115.    Plaintiffs re-allege and incorporate by reference all preceding paragraph as though fully set forth herein.

116.    Nevada Civil Code § 2932.5 provides.

> Where a power to sell real property is given to a mortgagee, or other encumbrances, in an instrument intended to secure the payment of money, the power is part of the Security and vests in any person who by assignment becomes entitled to payment of the money secured by the instruments. The power of sale may be exercised by the assigned if the assignment us duly acknowledged and recorded.

117.    Plaintiffs are informed and believe, and thereon allege that § 2932.5 require the recordation of an assignment of the beneficial interest in a deed of trust prior to foreclosure. Defendants, and each of them, cannot show valid and recorded assignments.

118.    As a proximate result of Defendant's action, Plaintiffs have been damaged in an amount not yet ascertained, to be proven at trial.

119.    WHEREFORE, Plaintiffs prays for relied as set forth below.

### EIGHTH CAUSE OF ACTION

### UNFAIR BUSINESS PRACTICES IN VIOLATION OF NEVADA
### BUSINESS & PROFESSIONS CODE § 17200 ET SEQ
### (Against All Defendants and Does 80-100)

120.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth therein.

### RECENT DEVELOPMENTS AND DOCUMENT FRAUD

121.   On September 24, 2010, NEVADA Attorney General, Edmund G. Brown, Jr. (aka Jerry Brown) ("AG"), directed ALLY Financial, Inc., which owns GMAC, Mortgage LLC, to stop foreclosures in Nevada until it proves it is complying with State law.

122.   On October 1, 2010, the AG similarly requested that a J.P. Morgan Chase stop foreclosure in Nevada until it proves it is complying with State law.

123.   Since then, Bank of America has halted foreclosures in 23 judicial foreclosure States.

124.   On or about October 11, 2010, BAC announced that it is temporarily halting foreclosures nationwide.

125.   The impetus of these necessary but drastic measures stems from allegations of document fraud on the part of the banks and their servicers. This epidemic is not limited to the banks listed above, but is an industry wide problem.

126.   During the securitization era, Banks and the resulting trusts, in the rust to securitized mortgages and sell those to investors routinely ignored the critical step of obtaining mortgage assignments from the original lenders to the securities companies to the trusts.

127.   Now, years later, when the companies "servicing" the trusts need to foreclose, there are no documents available to documents the proper chain of title because none were originally created. As a result, banks are creating the missing documents or outsourcing the documents to companies like Lender Processing Services to produce the needed assignments. This practice was admitted by deposed bank executives such as GMAC's Jeffrey Stephen who admitted in sworn

deposition testimony to signing more than 500 documents a day and up to 10, 000 documents a month related to foreclosures without reviewing them.

128.    Due to the strict timelines and guidelines to complete a foreclosure, banks are also fabricating other documents to comply with Nevada's foreclosure guidelines.

129.    The impact of these allegations is so cogent that Old Republic National Title Company will no longer insure the title on homes foreclosed by J.P. Morgan Chase or GMAC, Mortgage LLC.

130.    As further proof of the unlawful business practices, other state legislatures have taken steps to make the process more transparent (see Arizona State Senate Bill 1259, requiring non-originating foreclosure lenders to produce full chain of title to verify ownership). http://www.azleg.gov/DocuemtnsForBill.asp? Bill_Number=SB1259&Session_ID=102

131.    Other states have taken the lead to void foreclosure sales by parties who lack standing to foreclose. *See, e.g., U.S. Bank Nat. Ass'n v. Ibanez* (2011) 941 N.E.2d 40. Most recently, an Alabama Circuit recognized the legal ramifications regarding the failure of banks and their trustees to properly transfer Notes and Deeds of Trusts. In *Phyllis Horace v. La Salle Bank National Association, Et Al,* 57-cv-2008-00362.00, the Alabama Circuit Court not only sided with the homeowner on this exact issue; the court issued an order **permanently enjoining** the defendant trust, LaSalle Bank National Association, from foreclosing on the plaintiff's house because LaSalle failed under New York law and its own Pooling and Servicing Agreement to properly transfer the plaintiff's mortgage note on the plaintiff's home.

132.    In permanently forestalling any foreclosure on the home by defendant, the court did not mince words: "First, the Court is surprised to the point of astonishment that the defendant (LaSalle Bank National Association) did not comply with the terms of its own Pooling and Servicing Agreement and further did not comply with New York Law in attempting to obtain

assignment of Plaintiff Horace's notes and mortgage. Second, plaintiff Horace is a third party beneficiary of the Pooling and Servicing Agreement created by the defendant trust (LaSalle Bank National Association). Indeed without such Pooling and Servicing Agreements, Plaintiffs Horace and other mortgagors similarly situated would never have been able to obtain financing."

133.    Plaintiffs are informed and believe, and therefore allege, that Defendants, and each of them, engaged in unlawful, unfair or fraudulent business acts or practices and unfair, deceptive, untrue or misleading advertising in violation, rising to unfair and deceptive business practices, in violation of Nevada Business and Professions Code § 17200 and the Unfair and Deceptive Acts and Practices statutes.

134.    The above specified Defendant, and each of them, as part of their business practices, fraudulently and knowingly procured or offered false or fraudulently prepared documents to fabricate the missing gaps in the chain of title or to falsely demonstrate compliance with the PSA, state law and Regulations related to non-judicial foreclosure and allowed these documents to be filed, registered, or recorded within this jurisdiction. The members of the public are likely to be deceived by this unlawful, oppressive and fraudulent business practices.

135.    Plaintiffs are informed and believe, and thereon allege that Defendant lacked authority to execute an assignment of the Deed of Trust from the original beneficiary to Defendant.

136.    Plaintiffs are informed and believe, and thereon allege that Defendant at all relevant times had knowledge that no such authority was ever bestowed upon it by the original lender, yet Defendant still caused to be recorded the false documents with the county recorder. Further, the assignment recorded is signed by an individual purporting to be the "Assistant Secretary" of MERS. Plaintiffs believe and thereupon allege that this individual did not have the authority or capacity to sign on behalf on MERS to cause such substitutions or assignments. As such, Plaintiffs are informed and believe, and thereon allege that certain misrepresentations, including sworn

statements. Were made to the public to cause the notary public to perform an improper notary act on a document.

137.    The business practices of the above specified Defendants, and each of them, were unlawful, deceptive, misleading and fraudulent and violate Nevada law as alleged herein above. Further, the above specified Defendants, and each of them, knew that their business practices were unlawful, deceptive, misleading and fraudulent at the time they were so engaged.

138.    Pursuant to Sections 17200 et seq. of the Nevada *Business and Professions Code,* unfair business practices include any unlawful, unfair, misleading or fraudulent business practice. The fraudulent and unlawful conduct of the above specified Defendants, and each of them, as alleged herein, constituted unlawful, unfair and/or fraudulent business practices within the provision of §§ 17200 et seq of the Nevada *Business and Professions Code.*

139.    As a direct and proximate result of the unfair business practices of the above specified Defendants, and each of them, as herein alleged, Plaintiffs have incurred damages in that Plaintiffs' Home is now subject to foreclosure at the hands of the above specified Defendants, and each of them, all by reason of which Plaintiffs have been damaged in at least the sum of the jurisdictional amount of this Court, plus interest, attorney's fees and costs, and additional amounts, according to proof at the time of trial.

140.    As a further direct and proximate result if the unfair business practices of the above specified Defendants, and each of them, Plaintiffs are entitle to an order or preliminary injunction prohibiting said Defendants, and each of them, from selling or attempting to sell, or causing to be sold, any interest whatsoever in the Home.

**NINTH CAUSE OF ACTION**

**Violation of Section § 726 of the Nevada Code of Civil Procedure**

"PSA TRUSTEE"

144.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth therein.

145.    These provisions are "to prevent multiplicity of actions, to compel exhaustion of all security and to require the debtor to be credited with the fair market value of the secured property. It may well be interpreted as to an entity collection twice or more for the same debt.  This may cause the security interest to be cancelled.

146.    "TRUSTEE" is not a registered trust in Nevada to do business, and has received over $8.5 billion payments from AIG's **default**, HAMP program, and has been paid untold amounts from any default that occurs, it is paid by counter parties, and mortgage insurance reimbursements of untold amounts.

147.    Plaintiff alleges that "TRUSTEE" has already been paid for the value of the security interest Plaintiff's property, which furthers the need for accurate accounting including previous payoff that would have cover such debt.

148.    "TRUSTEE" is requested by discovery to present an accurate detail of the accountings.  Including appropriately timed sales and assignments and payoffs, and if defendant has received such credits first, then the security interest in Plaintiff's property would be lost. "DEUTSCHE" takes advantage of the insurances and credit enhancements inside of the trust (such as excess interest reserves, over collateralization reserves, NIMS or other insurance policies which were written by AIG), which cover losses on the mortgage loans.

Plaintiff request that the security interest in this property be removed based on Section § 726 of Nevada Code of Civil Procedure as this interest has been paid.

## TENTH CAUSE OF ACTION
## CIVIL RICO

### COUNT ONE

Acquisition and Maintenance of an Interest in and Control of
an *Enterprise* Engaged in a *Pattern of Racketeering Activity*:
18 U.S.C. §§ 1961(5), 1962(b)

149.    Plaintiff now re-alleges each and every allegation as set forth above, and hereby incorporates same by reference, as if all were set forth fully herein.  Substance prevails over form.

150.    At various times and places partially enumerated in Plaintiff's *documentary material*, all Defendants did acquire and/or maintain, directly or indirectly, an interest in or control of a RICO

*enterprise* of individuals who were associated in fact and who did engage in, and whose activities did affect, interstate and foreign commerce, all in violation of 18 U.S.C. §§ 1961(4), (5), (9), and 1962(b).

151.    During the ten (10) calendar years preceding  August 1, 2010 *A.D.*, all Defendants did cooperate jointly and severally in the commission of two (2) or more of the RICO predicate acts that are itemized in the RICO laws at 18 U.S.C. §§ 1961(1)(A) and (B), and did so in violation of the RICO law at 18 U.S.C. 1962(b) (Prohibited activities).

152.    Plaintiff further alleges that all Defendants did commit two (2) or more of the offenses itemized above in a manner which they calculated and premeditated intentionally to threaten continuity, *i.e.* a continuing threat of their respective *racketeering activities*, also in violation of the RICO law at 18 U.S.C. 1962(b) *supra*.

153.    Pursuant to the original Statutes at Large, the RICO laws itemized above are to be *liberally* construed by this honorable Court.  Said construction rule was never codified in Title 18 of the United States Code, however.  See 84 Stat. 947, Sec. 904, Oct. 15, 1970.

154.    *Respondeat superior* (principal is liable for agents' misconduct: knowledge of, participation in, and benefit from a RICO enterprise).

### COUNT TWO:
Conduct and Participation in a RICO *Enterprise*
through a *Pattern of Racketeering Activity*:
18 U.S.C. §§ 1961(5), 1962(c)

155.    Plaintiff now re-alleges each and every allegation as set forth above, and hereby incorporates same by reference, as if all were set forth fully herein.  Substance prevails over form.

156.    At various times and places partially enumerated in Plaintiff's *documentary material*, all Defendants did associate with a RICO *enterprise* of individuals who were associated in fact and who engaged in, and whose activities did affect, interstate and foreign commerce.

157.    Likewise, all Defendants did conduct and/or participate, either directly or indirectly, in the conduct of the affairs of said RICO *enterprise* through a *pattern of racketeering activity*, all in violation of 18 U.S.C. §§ <u>1961</u>(4), (5), (9), and <u>1962</u>(c).

158.    During the ten (10) calendar years preceding July 1, 2010 *A.D.*, all Defendants did cooperate jointly and severally in the commission of two (2) or more of the RICO predicate acts that are itemized in the RICO laws at 18 U.S.C. §§ <u>1961</u>(1)(A) and (B), and did so in violation of the RICO law at <u>18 U.S.C. 1962</u>(c) (Prohibited activities).

159.    Plaintiff further alleges that all Defendants did commit two (2) or more of the offenses itemized above in a manner which they calculated and premeditated intentionally to threaten continuity, *i.e.* a continuing threat of their respective *racketeering activities*, also in violation of the RICO law at <u>18 U.S.C. 1962</u>(c) *supra*.

160.    Pursuant to 84 Stat. 947, Sec. 904, Oct. 15, 1970, the RICO laws itemized above are to be *liberally* construed by this honorable Court.  Said construction rule was never codified in Title 18 of the United States Code, however.  *Respondeat superior* (as explained above).

### COUNT THREE:
Conspiracy to Engage in a
*Pattern of Racketeering Activity*:
18 U.S.C. §§ <u>1961</u>(5), <u>1962</u>(d)

161.    Plaintiff now re-alleges each and every allegation as set forth above, and hereby incorporates same by reference, as if all were set forth fully herein.  Substance prevails over form.

162.    At various times and places partially enumerated in Plaintiff's *documentary material*, all Defendants did conspire to acquire and maintain an interest in a RICO *enterprise* engaged in a *pattern of racketeering activity*, in violation of 18 U.S.C. §§ <u>1962</u>(b) and (d).

163.    At various times and places partially enumerated in Plaintiff's *documentary material*, all Defendants did also conspire to conduct and participate in said RICO *enterprise* through a *pattern*

*of racketeering activity*, in violation of 18 U.S.C. §§ 1962(c) and (d).  See also 18 U.S.C. §§ 1961(4), (5) and (9).

164.    During the ten (10) calendar years preceding July 1, 2010 *A.D.*, all Defendants did cooperate jointly and severally in the commission of two (2) or more of the predicate acts that are itemized at 18 U.S.C. §§ 1961(1)(A) and (B), in violation of 18 U.S.C. 1962(d).

165.    Plaintiff further alleges that all Defendants did commit two (2) or more of the offenses itemized above in a manner which they calculated and premeditated intentionally to threaten continuity, *i.e.* a continuing threat of their respective *racketeering activities*, also in violation of 18 U.S.C. 1962(d) (Prohibited activities *supra*).

166.    Pursuant to 84 Stat. 947, Sec. 904, Oct. 15, 1970, the RICO laws itemized above are to be *liberally* construed by this honorable Court.  Said construction rule was never codified in Title 18 of the United States Code, however.  *Respondeat superior* (as explained above).

167. USC 891-984 Extortionate credit transactions;  1341 mail fraud, 1343 wire fraud, 1344 financial institution fraud, 1503 obstruction of justice, 1952 racketeering, 1956 laundering of monetary instruments, 1957 monetary transaction derived from specified unlawful activity, and 29 USC 186 501c – fraud connected with a case under title 11, fraud in the sale of securities.

Please take notice that Plaintiff demands trial by jury in this action

### PRAYER FOR RELIEF

WHEREFORE Plaintiffs will ask for the following for each Cause of Action to be awarded:

### FIRST THROUGH TENTH CAUSE OF ACTION

1.  For Compensatory Damages in an amount to be determined by proof at trial;

2.  For Special Damages in an amount to be determined by proof at trial;

3.  For General Damages in an amount to be determined by proof at trial;

4. For Punitive Damages as allowed by law;

5. For Restitution as allowed by law;

6. For Attorney's Fees and Costs of this action;

7. For Declaratory Relief, including but not limited to the following Decrees of this Court that:

    a. Plaintiffs are the prevailing party;

    b. The Trustees of the Trusts have no enforceable secured or unsecured claim against the Property;

    c. The Sponsor has no enforceable secured or unsecured claim against the Property;

    d. The Depositor has no enforceable secured or unsecured claim against the Property;


**WE DECLARE UNDER PENALTY OF PERJURY THE FOREGOING IS TRUE AND CORRECT TO THE BEST OF O KNOWLEDGE.**

DATED this ___6th___ day of ___Feb.___, 20_12_.

GERARDO AGUSTIN, In Pro Se

# EXHIBIT A1:    DEED OF TRUST

Assessor's Parcel Number:
139-14-614-014
Return To:
OPTION ONE MORTGAGE CORPORATION
P.O. BOX 57096
IRVINE, CA 92619-7096
ATTN:  RECORDS MANAGEMENT

Prepared By:

Recording Requested By:

Loan Number: 171043755
Servicing Number: 002299682-1
1407 0410 ICP                              [Space Above This Line For Recording Data]

20070404-0001142

Fee: $24.00
N/C Fee: $0.00

04/04/2007          09:57:36
T20070058636
Requestor:
 LAND TITLE OF NEVADA

Debbie Conway                    DHG
Clark County Recorder    Pgs: 11

## DEED OF TRUST

THIS DEED OF TRUST ("Security Instrument") is made on March 29, 2007
The grantor is
GUADALUPE G  AUGUSTIN AND GERARDO M AGUSTIN, WIFE AND HUSBAND, AS JOINT TENANTS

("Borrower").

The trustee is PREMIER TRUST DEED SERVICES, INC.                         ("Trustee").
The beneficiary is,
          Option One Mortgage Corporation, a California Corporation
                    CALIFORNIA    which is organized and existing under the laws of
3 Ada, Irvine, CA  92618                              , and whose address is
                                                    ("Lender").

Borrower owes Lender the principal sum of ONE HUNDRED FORTY TWO THOUSAND ONE HUNDRED
...AND NO/100THs                   Dollars (U.S. $142,100.00         ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides
for monthly payments, with the full debt, if not paid earlier, due and payable on May 01, 2037
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and
all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced
under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's
covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably
grants and conveys to Trustee, in trust, with power of sale, the following described property located in
          Clark          County, Nevada:
LOT FOURTEEN (14) OF PINON PARK AS SHOWN BY MAP THEREOF ON FILE IN BOOK 29
OF PLATS, PAGE 80 IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY,
NEVADA.

                              2853   LODGE POLE CT

which has the address of
     NORTH LAS VEGAS                    [Street]   89030-5213
                              , Nevada              ("Property Address");
          [City]                       [Zip Code]
NEVADA DEED OF TRUST - Single Family
Page 1 of 9                                            NVD10011.wp (03-08-07)

Loan Number:  171043755       Servicing Number:  002299682-1       Date:  03/29/07

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. **Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a Lender for a federally related mortgage loan may require for Borrower's escrow account under the Federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 *et seq.* ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not Charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under

NVD10012.wp (03-08-07)

Loan Number: 171043755    Servicing Number: 002299682-1    Date: 03/29/07

the Note.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, or applicable Law otherwise requires, insurance proceeds shall be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining any such insurance proceeds, and then, at Lender's option, in such order and proportion as Lender may determine in its sole and absolute discretion, and regardless of any impairment of security or lack thereof: (i) to the sums secured by this Security Instrument, whether or not then clue, and to such components thereof as Lender may determine in its sole and absolute discretion; and/or (ii) to Borrower to pay the costs and expenses of necessary repairs or restoration of the Property to a condition satisfactory to Lender. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, Lender may collect the insurance proceeds. Lender may, in its sole and absolute discretion, and regardless of any impairment of security or lack thereof, use the proceeds to repair or restore the Property or to pay the sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

If Borrower obtains earthquake insurance, any other hazard insurance, or any other insurance on the Property and such insurance is not specifically required by Lender, then such insurance shall (i) name Lender as loss payee thereunder, and (ii) be subject to the provisions of this paragraph 5.

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower acknowledges that the Lender does not desire to make a loan to Borrower secured by this property on the terms contained in the Note unless the property is to be occupied by Borrower as Borrower's primary/secondary residence. Lender makes non-owner residence loans of different terms. Borrower promises and assures Lender that Borrower intends to occupy this property as Borrower's primary/secondary

    NVD10013.wp (03-08-07)

Loan Number: 171043755      Servicing Number: 002299682-1      Date: 03/29/07

residence and that Borrower will so occupy this property as its sole primary/secondary residence within sixty (60) days after the date of the Security Instrument. If Borrower breaches this promise to occupy the property as Borrower's primary/secondary residence, then Lender may invoke any of the following remedies, in addition to the remedies provided in the Security Instrument; (1) Declare all sums secured by the Security Instrument due and payable and foreclose the Security Instrument, (2) Decrease the term of the loan and adjust the monthly payments under the Note accordingly, increase the interest rate and adjust the monthly payments under the Note accordingly, or (3) require that the principal balance be reduced to a percentage of either the original purchase price or the appraised value then being offered on non-owner occupied loans.

Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

Borrower shall, at Borrower's own expense, appear in and defend any action or proceeding purporting to affect the Property or any portion thereof or Borrower's title thereto, the validity or priority of the lien created by this Security Instrument, or the rights or powers of Lender or Trustee with respect to this Security Instrument or the Property. All causes of action of Borrower, whether accrued before or after the date of this Security Instrument, for damage or injury to the Property or any part thereof, or in connection with any transaction financed in whole or in part by the proceeds of the Note or any other note secured by this Security Instrument, by Lender, or in connection with or affecting the Property or any part thereof, including causes of action arising in tort or contract and causes of action for fraud or concealment of a material fact, are, at Lender's option, assigned to Lender, and the proceeds thereof shall be paid directly to Lender who, after deducting therefrom all its expenses, including reasonable attorneys' fees, may apply such proceeds to the sums secured by this Security Instrument or to any deficiency under this Security Instrument or may release any monies so received by it or any part thereof, as Lender may elect. Lender may, at its option, appear in and prosecute in its own name any action or proceeding to enforce any such cause of action and may make any compromise or settlement thereof. Borrower agrees to execute such further assignments and any other instruments as from time to time may be necessary to effectuate the foregoing provisions and as Lender shall request.

7. **Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate in effect from time to time and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

8. **Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower

NVD10014.wp (03-08-07)

Loan Number: 171043755      Servicing Number:  002299682-1      Date: 03/29/07

shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously
in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect,
from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage
is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage
insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender
will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments
may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the
period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained.
Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve,
until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and
Lender or applicable law.

     **9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property.
Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the
inspection.

     **10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection
with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are
hereby assigned and shall be paid to Lender.  Lender may apply, use or release the condemnation proceeds in the
same manner as provided in paragraph 5 hereof with respect to insurance proceeds.

     If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor
offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after
the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration
or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

     Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not
extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount
of such payments.

     **11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or
modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor
in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors
in interest.  Lender shall not be required to commence proceedings against any successor in interest or refuse to
extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason
of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender
in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

     **12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements
of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the
provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several.  Any Borrower who
co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to
mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument;
(b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and
any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms
of this Security Instrument or the Note without that Borrower's consent.

     **13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum
loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected
in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the
amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower
which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing
the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the
reduction will be treated as a partial prepayment without any prepayment charge under the Note.

     **14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering
it or by mailing it by first class mail unless applicable law requires use of another method.  The notice shall be

NVD10015.wp (03-08-07)

Loan Number: 171043755     Servicing Number: 002299682-1     Date: 03/29/07

directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

**19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law. The holder of the Note and this Security Instrument shall be deemed to be the Lender hereunder.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

Borrower shall be solely responsible for, shall indemnify, defend and hold harmless Lender, its directors, officers, employees, attorneys, agents, and their respective successors and assigns, from and against any and all

NVD10016.wp (03-08-07)

Loan Number:  171043755        Servicing Number:  002299682-1      Date:  03/29/07

claims, demands, causes of action, loss, damage, cost (including actual attorneys' fees and court costs and costs of
any required or necessary repair, cleanup or detoxification of the Property and the preparation and implementation
of any closure, abatement, containment, remedial or other required plan), expenses and liability directly or indirectly
arising out of or attributable to (a) the use, generation, storage, release, threatened release, discharge, disposal,
abatement or presence of Hazardous Substances on, under or about the Property, (b) the transport to or from the
Property of any Hazardous Substances, (c) the violation of any Hazardous Substances law, and (d) any Hazardous
Substances claims.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous
substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic
petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde,
and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the
jurisdiction where the Property is located that relate to health, safety or environmental protection.

ADDITIONAL COVENANTS.  Borrower and Lender further covenant and agree as follows:

21.  Acceleration; Remedies. If any installment under the Note or notes secured hereby is not paid when
due, or if Borrower should be in default under any provision of this Security Instrument, or if Borrower is in default
under any other deed of trust or other instrument secured by the Property, all sums secured by this Security
Instrument and accrued interest thereon shall at once become due and payable at the option of Lender without prior
notice, except as otherwise required by applicable law, and regardless of any prior forbearance. In such event,
Lender, at its option, and subject to applicable law, may then or thereafter invoke the power of sale and/or any
other remedies or take any other actions permitted by applicable law. Lender will collect all expenses incurred in
pursuing the remedies described in this Paragraph 21, including, but not limited to, reasonable attorneys' fees and
costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute written notice of the
occurrence of an event of default and of Lender's election to cause the Property to be sold, and shall cause such
notice to be recorded in each county in which any part of the Property is located. Lender shall mail copies of the
notice as prescribed by applicable law to Borrower and to the persons prescribed by applicable law. Trustee shall
give public notice of sale to the persons and in the manner prescribed by applicable law. After the time required
by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest
bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any
order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement
at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any
sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or
warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the
statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of
the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this
Security Instrument; and (c) any excess to the person or persons legally entitled to it.

22.  Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall release
this property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any
recordation costs. Lender may charge such person or persons a fee for releasing the Property for services rendered
if the charging of the fee is permitted under applicable law.

23.  Substitute Trustee. Lender at its option, may from time to time remove Trustee and appoint a
successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee
shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

24.  Assumption Fee. If there is an assumption of this loan, Lender may charge an assumption fee equal
to 1% of the unpaid principal balance of the loan at the time of assumption.

25.  Misrepresentation and Nondisclosure. Borrower has made certain written representations and
disclosures in order to induce Lender to make the loan evidenced by the Note or notes which this Security
Instrument secures, and in the event that Borrower has made any material misrepresentation or failed to disclose

NVD10017.wp (03-08-07)

Loan Number: 171043755      Servicing Number:  002299682-1    Date: 03/29/07

any material fact, Lender, at its option and without prior notice or demand, shall have the right to declare the indebtedness secured by this Security Instrument, irrespective of the maturity date specified in the Note or notes secured by this Security Instrument, immediately due and payable. To the extent permitted by applicable law, Trustee, upon presentation to it of an affidavit signed by Lender setting forth facts showing a default by Borrower under this paragraph, is authorized to accept as true and conclusive all facts and statements therein, and to act thereon hereunder.

26. **Time is of the Essence.** Time is of the essence in the performance of each provision of this Security Instrument.

27. **Waiver of Statute of Limitations.** The pleading of the statute of limitations as a defense to enforcement of this Security Instrument, or any and all obligations referred to herein or secured hereby, is hereby waived to the fullest extent permitted by applicable law.

28. **Modification.** This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender.

29. **Reimbursement.** To the extent permitted by applicable law, Borrower shall reimburse Trustee and Lender for any and all costs, fees and expenses which either may incur, expend or sustain in the execution of the trust created hereunder or in the performance of any act required or permitted hereunder or by law or in equity or otherwise arising out of or in connection with this Security Instrument, the Note, any other note secured by this Security Instrument or any other instrument executed by Borrower in connection with the Note or Security Instrument. To the extent permitted by applicable law, Borrower shall pay to Trustee and Lender their fees in connection with Trustee and Lender including, but not limited to assumption application fees; fees for payoff demands and, statements of loan balance; fees for making, transmitting and transporting copies of loan documents, verifications, full or partial lien reconveyances and other documents requested by borrower or necessary for performance of Lender's rights or duties under this Security Instrument; fees arising from a returned or dishonored check; fees to determine whether the Property is occupied, protected, maintained or insured or related purposes; appraisal fees, inspection fees, legal fees, broker fees, insurance mid-term substitutions, repair expenses, foreclosure fees and costs arising from foreclosure of the Property and protection of the security for this Security Instrument; and all other fees and costs of a similar nature not otherwise prohibited by law.

30. **Clerical Error.** In the event Lender at any time discovers that the Note, any other note secured by this Security Instrument, the Security Instrument, or any other document or instrument executed in connection with the Security Instrument, Note or notes contains an error that was caused by a clerical mistake, calculation error, computer malfunction, printing error or similar error, Borrower agrees, upon notice from Lender, to re-execute any documents that are necessary to correct any such error(s). Borrower further agrees that Lender will not be liable to Borrower for any damages incurred by Borrower that are directly or indirectly caused by any such error.

31. **Lost, Stolen, Destroyed or Mutilated Security Instrument and Other Documents.** In the event of loss, theft or destruction of the Note, any other note secured by this Security Instrument, the Security Instrument or any other documents or instruments executed in connection with the Security Instrument, Note or notes (collectively, the "Loan Documents"), upon Borrower's receipt of an indemnification executed in favor of Borrower by Lender, or, in the event of the mutilation of any of the Loan Documents, upon Lender's surrender to Borrower of the mutilated Loan Document, Borrower shall execute and deliver to Lender a Loan Document in form and content identical to, and to serve as a replacement of, the lost, stolen, destroyed, or mutilated Loan Document, and such replacement shall have the same force and effect as the lost, stolen, destroyed, or mutilated Loan Documents, and may be treated for all purposes as the original copy of such Loan Document.

32. **Assignment of Rents.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property. Borrower shall have the right to collect and retain the rents of the Property as they become due and payable provided Lender has not exercised its rights to require immediate payment in full of the sums secured by this Security Instrument and Borrower has not abandoned the Property.

33. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

Page 8 of 9                                                                NVD10018.wp (03-08-07)

Loan Number: 171043755     Servicing Number: 002299682-1    Date: 03/29/07

[Check applicable box(es)]

☐ Adjustable Rate Rider        ☐ Condominium Rider            ☐ 1-4 Family Rider
☐ Manufactured Home Rider      ☐ Planned Unit Development Rider ☐ Occupancy Rider
☒ Other(s) (specify) Balloon Rider

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____ -Borrower    _____ -Borrower
GUADALUPE  AGUSTIN

_____ -Borrower    _____ -Borrower
                                            GERARDO M AGUSTIN

_____ -Borrower    _____ -Borrower

I affirm, under penalties of perjury that this document submitted for recording does not contain a social security number.

_____[Space Below This Line For Acknowledgment]_____

STATE OF NEVADA,                    Clark    County ss:

On ____3·29·07____ , personally appeared before me, a Notary
                DATE
Public (or judge or other authorized person, as the case may be), Guadalupe Agustin
and Gerardo M Agustin _____

personally known or proven to me to be the person(s) whose name(s) is/are subscribed to the foregoing and who acknowledged that he executed the above instrument.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official stamp at my office in the County of Clark _____

the day and year in this certificate first above written.

MARY QUACKENBUSH
Notary Public State of Nevada
No. 05-96415-1
My appt. exp. May 31, 2009

Mary Quackenbush
Notary Public
County of Clark , State of Nevada

Mail Tax Statement To:
Mary Quackenbush

Page 9 of 9                                    NVD10019.wp (03-08-07)

14070410-KP

## EXHIBIT "A"
### Legal Description

LOT FOURTEEN (14) OF PINON PARK AS SHOWN BY MAP THEREOF ON FILE IN
BOOK 29 OF PLATS, PAGE 80 IN THE OFFICE OF THE COUNTY RECORDER OF
CLARK COUNTY, NEVADA.

**APN:** 139-14-614-014

Loan Number:  171043755          Servicing Number:  002299682-1          Date:  03/29/07

# BALLOON RIDER

This is a BALLOON LOAN. The term of the loan is  40/30  years. This means that while your monthly payment amount is amortized in accordance with a  40  year loan term, the loan is payable in full in THIRTY (30) years from the date the loan is made. As a result, you will be required to repay the entire remaining principal balance, together with accrued interest, late charges, if any, and all advancements made by the lender under the terms of this loan in THIRTY (30) years from the date on which the loan is made.

The lender has no obligation to refinance this loan at the end of its term. Therefore, you may be required to repay the loan out of other assets you may own, or you may have to find another lender willing to refinance the loan.

Assuming this lender or another lender refinances this loan at maturity, you will probably be charged interest at market rates prevailing at that time which may be considerably higher or lower than the interest rate paid on this loan. You may also have to pay some or all of the closing costs normally associated with the new mortgage loan even if you obtain refinancing from the same lender.

_____          _____
GUADALUPE  AGUSTIN            -Borrower                              -Borrower

_____          _____
                             -Borrower   GERARD M. AGUSTIN          -Borrower

_____          _____
                             -Borrower                              -Borrower

**MULTISTATE BALLOON RIDER**
Page 1 of 1                                              USR1091.wp (01-12-07)